1

2

3

4
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE
5

6
CORPORATION OF THE
CATHOLIC ARCHBISHOP OF
7
SEATTLE, a Washington corporation
sole, and BISHOP BLANCHET HIGH
8
SCHOOL,

9
               Petitioners/Plaintiffs,

10
     v.                                                          C13-1589 TSZ

11
CITY OF SEATTLE, a Washington                   ORDER
municipal corporation,
12
               Respondent/Defendant.
13

CONCERNED BLANCHET
14
NEIGHBORS, an unincorporated
association,
15
               Additional Party.
16

17
     THIS MATTER comes before the Court on Plaintiffs' motion for summary

18
judgment, docket no. 18, Defendant's cross-motion for summary judgment, docket no.

19
22, and Interested Party Concerned Blanchet Neighbors' cross-motion for summary

20
judgment, docket no. 25.  Having considered all documents filed in support of and

21
opposition to all motions and the arguments of counsel, the Court enters the following

22
Order.

23

**Background**

Plaintiffs Corporation of the Catholic Archbishop of Seattle and Bishop Blanchet High School ("Bishop Blanchet") seek review of a land use decision made by the City of Seattle (the "City"). The background facts of this case are not in dispute and will be addressed briefly for purposes of the pending motions.

### A. Bishop Blanchet's Variance Request

Bishop Blanchet, a private Catholic high school, is located in a residential, single-family zone in North Seattle. The height limit for institutions located in residential, single-family zones is 30 feet. To better illuminate its athletic field,[1] Bishop Blanchet sought approval from the City to install four, 70-foot-tall light poles. As required by the City's Land Use Code,[2] Bishop Blanchet was required to apply for a variance, because the proposed light poles exceeded the height limit, as well as to submit an application for Administrative Conditional Use.

On April 25, 2013, the Director of the Department of Planning and Development ("DPD") approved Bishop Blanchet's applications. DPD conditioned its approval on numerous requirements, including imposing 21 detailed conditions to address impacts associated with lighting and increased field use, such as noise, traffic, parking demands, and light spill and glare, as well as imposing restrictions on the days and times during

---

[1] Bishop Blanchet's athletic field is not lighted; therefore, Bishop Blanchet must rent lighted fields for team practices and games after dark, which can occur as early as 5:00 p.m. Bishop Blanchet asserts that it spends thousands of dollars each year on field rentals and travel expenses, and that rental fields are becoming less available due to increased demand.

[2] SMC 23.40.020 (variances) and SMC 23.76 (master use permit requirements for administrative conditional use in single-family and multifamily zones).

which Bishop Blanchet would be allowed to use its field lighting.  On May 8, 2013, Concerned Blanchet Neighbors ("Neighbors"), an association of homeowners and residents living near Bishop Blanchet, appealed the DPD decision to the Hearing Examiner.  On July 17, 2013, the Hearing Examiner reversed the DPD Decision approving the variance, concluding that Bishop Blanchet failed to meet the first criterion for granting a variance.[3]

### B.  Special Exception for Public Schools

The City exempts public schools in residential, single-family zones from the 30-foot height requirement that would otherwise apply to athletic field lighting.  A new or existing public school may install higher light poles to illuminate an athletic field, up to a maximum of 100 feet, if the DPD "determines that the additional height is necessary to ensure adequate illumination and that impacts from light and glare are minimized to the greatest extent practicable."  SMC 23.51B.002.D.6 (the "Special Exception").  Under the Special Exception, public schools are not required to seek a variance to exceed otherwise applicable height limits—rather, public schools need only submit an engineer's report demonstrating that impacts from light and glare are minimized.  SMC 23.51.0002.D.6.a.

Two North Seattle public high schools situated in residential zones, Nathan Hale High School and Ingraham High School, have obtained DPD approval and installed light

---

[3] The first criterion for granting a variance requires the existence of unusual conditions, <u>not created by the property owner</u>, which deprive the property of rights and privileges enjoyed by other properties in the same zone or vicinity.  <u>See</u> SMC 23.40.020.C.1.  The Hearing Examiner found that any unusual conditions applicable to the property were created by Bishop Blanchet itself, in constructing a school in a residential area.  It is undisputed that Bishop Blanchet could never overcome this hurdle and be granted a variance.

1    poles on athletic fields utilizing the Special Exception process.[4]  In 2003, Nathan Hale

2    obtained approval to install ten, 82-foot light standards and two, 95-foot light standards

3    on its athletic field.  Similarly, in 2005, Ingraham obtained approval to install 39 total

4    field lights on its campus, including eight, 89- to 90-foot light standards around its

5    football field.

6    ### C.  Procedural History

7        Bishop Blanchet seeks review of the City's decision, claiming that requiring

8    Bishop Blanchet to obtain a variance to install light poles—when public schools are

9    granted a Special Exception—violates the Equal Terms provision of the Religious Land

10   Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.*, and

11   deprives Bishop Blanchet of substantive due process under Article I, Section 3 of the

12   Washington State Constitution.  Bishop Blanchet, the City, and Neighbors have each

13   filed for summary judgment, agreeing that there are no material facts in dispute.

14   ## Analysis

15   ### A.  Standard of Review

16       Summary judgment is appropriate when there is no genuine dispute as to material

17   facts and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

18   56(a).  The moving party bears the initial burden of demonstrating the absence of a

19   genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A

20   fact is material if it may affect the outcome of the case.  Anderson v. Liberty Lobby, Inc.,

21

22   [4] Compared to the 21 conditions imposed on Bishop Blanchet, DPD placed only six conditions
     each on its approvals of field lights at these two schools under the Special Exception.

23

ORDER - 4

1    477 U.S. 242, 248 (1986).  To survive a motion for summary judgment, the adverse party

2    must present "affirmative evidence," which "is to be believed" and from which all

3    "justifiable inferences" are to be favorably drawn.  Id. at 255, 257.  When the record,

4    taken as a whole, could not lead a rational trier of fact to find for the non-moving party,

5    summary judgment is warranted.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475

6    U.S. 574, 587 (1986).

7        **B.  RLUIPA Claim**

8        The RLUIPA applies whenever a government, including a municipality, imposes

9    or implements a land use regulation that affects a religious assembly or institution

10   through land use laws.  See 42 U.S.C. § 2000cc; see also Centro Familiar Cristiano

11   Buenas Nuevas v. City of Yuma, 651 F.3d 1163, 1169 (9th Cir. 2011).  The "equal

12   terms" provision of the statute provides that "[n]o government shall impose or implement

13   a land use regulation in a manner that treats a religious assembly or institution on less

14   than equal terms with a nonreligious assembly or institution."  42 U.S.C. § 2000cc(b)(1).

15   RLUIPA must be broadly construed in favor of protection of religious exercise.  42

16   U.S.C. § 2000cc-3(g); Centro Familiar, 651 F.3d at 1172.

17       There are four elements to establish a prima facie case of a RLUIPA equal terms

18   claim: (1) an imposition or implementation of a land-use regulation, (2) by a government,

19   (3) on a religious assembly or institution, (4) on less than equal terms with a nonreligious

20   assembly or institution.  Centro Familiar, 651 F.3d at 1170-1171.  If the religious

21   institution establishes a prima facie case, the burden of persuasion shifts to the

22

23

1   government on all elements.  Id. at 1171; 42 U.S.C. § 2000cc-2(b).  Only the fourth

2   element is at issue here.

3   **1.  Accepted Zoning Criteria Test**

4   Although the circuit courts are split on how to analyze whether treatment of the

5   religious institution is "equal" for purposes of a RLUIPA claim, the Ninth Circuit

6   adopted both the Third Circuit[5] and Seventh Circuit[6] tests in Centro Familiar, 651 F.3d at

7   1172-1173.  The court held that "[t]he city may be able to justify some distinctions drawn

8   with respect to churches, if it can demonstrate that the less-than-equal-terms are on

9   account of a legitimate regulatory purpose, not the fact that the institution is religious in

10  nature.  In this respect, our analysis is about the same as the Third Circuit's: we look to

11  see if the church is 'similarly situated as to the regulatory purpose.'"  Id. at 1172 (citing

12  Lighthouse Inst., 510 F.3d at 266).  However, the Court went on to note that "[t]he

13  Seventh Circuit, en banc, has refined this test to avoid inappropriate subjectivity by

14  requiring equality with respect to 'accepted zoning criteria.'"  Id. at 1172-1173 (citing

15  River of Life Kingdom Ministries, 611 F.3d at 373).  The Ninth Circuit held that the

16  accepted zoning criteria "refinement is appropriate where necessary to prevent evasion of

17  _____

18  [5] The Third Circuit uses a "regulatory purpose" test, under which "a regulation will violate the
19  Equal Terms provision only if it treats religious assemblies or institutions less well than secular
    assemblies or institutions that are similarly situated *as to the regulatory purpose*."  Lighthouse
20  Inst. for Evangelism, Inc. v. City of Long Branch, 510 F.3d 253, 266 (3d Cir. 2007) (emphasis in
    original).

21  [6] The Seventh Circuit adopted an "accepted zoning criteria" test, requiring religious
    organizations to be treated equally with respect to accepted zoning criteria, such as parking,
22  traffic control, and generation of tax revenue.  River of Life Kingdom Ministries v. Vill. of Hazel
    Crest, 611 F.3d 367, 373 (7th Cir. 2010).

23

1  the statutory requirement, though it makes no practical difference in this case." <u>Id.</u> at

2  1173 (emphasis added).  The court then went on to analyze the case using the accepted

3  zoning criteria test.  In this case, the parties have all argued that the accepted zoning

4  criteria test is the appropriate test to apply.

5       Under the "accepted zoning criteria" test, a religious institution cannot be treated

6  less than equally with a nonreligious institution if the two institutions cannot be

7  distinguished on the basis of the "accepted zoning criteria" that define the zone.  <u>Centro</u>

8  <u>Familiar</u>, 651 F.3d at 1173.  In <u>Centro Familiar</u>, the City of Yuma required the plaintiff

9  church, Centro Familiar Cristiano Buenas Nuevas, to apply for a conditional use permit

10  to hold church services in a vacant building in Yuma's Old Town Main Street area.  <u>Id.</u> at

11  1165-1166.  Had the church been a secular organization it would not have needed to

12  apply for a conditional use permit, because the Yuma City Code required religious

13  organizations, but not secular membership organizations, to obtain a permit to operate in

14  Old Town.  <u>Id.</u> at 1166.  The City of Yuma's Planning and Zoning Commission denied

15  the church's permit, finding that allowing a church in that building would be inconsistent

16  with an entertainment district because, pursuant to state law, no business could obtain a

17  liquor license within 300 feet of the church.  <u>Id.</u>

18       The <u>Centro Familiar</u> court held that no accepted zoning criteria justified the

19  unequal treatment of the church.  <u>Id.</u> at 1173.  The court found that requiring the church,

20  but not other comparable organizations, to obtain a permit to operate in Old Town did not

21  address the accepted zoning criteria – relevant to an entertainment district – of parking,

22  traffic control, generation of tax revenue, or a "street of fun" criterion.  <u>Id.</u>  The court

23

reasoned that the only possible criterion that could justify the unequal treatment is the damper a church would put on liquor licenses, but held that the "restriction on liquor licenses does not vitiate the inequality" because, among other reasons, all "religious organizations" were required to obtain the conditional use permit, but only a "church" would trigger the liquor license prohibition. Id. at 1174.

Here, the City argues that requiring Bishop Blanchet to obtain a variance, while exempting public schools from the same requirement, is justified by the accepted zoning criteria of "fostering the provision of public facilities by governmental agencies." City's Response at 12. The City relies upon several external sources to show that this "criteria" is generally accepted, including Washington's Growth Management Act,[7] land use treatises, and ordinances from other Washington cities. See id. at 13-19. The Court finds the City's arguments unpersuasive.

As evidenced by the Ninth Circuit's analysis in Centro Familiar, "accepted zoning criteria" are the objective characteristics of a particular use that determine whether a use should be excluded from the zone, given the purposes for which the zone was established. In contrast, "fostering the provision of public facilities by governmental agencies" is a subjective statement that has no relation to the zoning concerns of a residential, single-

---

[7] The City places great weight on Washington's Growth Management Act ("GMA"), RCW 36.70A.010 et seq. The GMA simply requires the City to ensure adequate public facilities to support development. See RCW 36.70A.020. It does not require the City to enact the particular zoning ordinances at issue here and does not prevent the City from allowing Bishop Blanchet to utilize the Special Exception process. Furthermore, allowing Bishop Blanchet to light its own athletic field would not in any way hinder the City's provision of public facilities and would, in fact, support the City's goal by eliminating Bishop Blanchet's use of public facilities.

ORDER - 8

1    family zone, the zone in which Bishop Blanchet and the Special Exception's public

2    schools are situated.

3           The Court must therefore ask what characteristics the residential, single-family

4    zone is meant to preserve, and what characteristics of a lighted athletic field would justify

5    its exclusion from that zone.  The City code offers evidence of the zoning criteria that are

6    relevant to consideration of a use within a residential, single-family area.  The types of

7    objective zoning criteria addressed in the code section setting forth principal uses

8    permitted in the zone include light, tree coverage, density, structure height, traffic,

9    parking, aesthetic considerations, and occupancy.  See generally SMC 23.44.008-016.

10   That these criteria are the acceptable zoning criteria for this zone is further supported by

11   the considerations set forth in the Special Exception itself, which focus on minimizing

12   light, glare, noise, traffic, height, and parking impacts.[8]  See SMC 23.51B.002.D.6.  The

13   City's proffered zoning criterion of "fostering the provision of public facilities by

14   governmental agencies" does not appear anywhere in the relevant code sections.

15          The Court finds that the Special Exception reflects the applicable regulatory

16   purpose.  Although the City argues that "fostering the provision of public facilities by

17   governmental agencies" is also an acceptable zoning criterion, this argument lacks merit.

18   The Court finds that the proffered justification, "fostering the provision of public

19

20   _____

21   [8] These are the objective criteria that make a lighted athletic field incompatible with the
     residential character of a single-family zone, and these criteria address the concerns raised by
22   Neighbors.  See, e.g., Neighbor's Cross-Motion, docket no. 25 at 9-10 (identifying the adverse
     impacts of Bishop Blanchet's athletic field on the neighborhood as parking, traffic, and noise).

23

ORDER - 9

1  facilities by governmental agencies," is not an accepted zoning criterion in a residential,

2  single-family zone.

3         With regard to the acceptable zoning criteria, such as noise, parking, and lighting,

4  the City does not dispute that Bishop Blanchet is similarly situated to comparable public

5  schools, such as Nathan Hale and Ingraham High Schools.  All three schools are located

6  in residential, single-family zones, have athletic fields which require lighting to use in the

7  evenings, and generate similar concerns with regard to parking, traffic, light, glare, and

8  noise.

9         Although there may be similarly situated private, non-religious comparators that

10  are also excluded from the Special Exception process, RLUIPA requires the Court to

11  compare Bishop Blanchet with any secular comparator permitted in, not excluded from,

12  the zone.  See, e.g., Centro Familiar, 651 F.3d at 1174 (finding that ordinance violates

13  RLUIPA by excluding religious organizations, even though secular schools were also

14  excluded).  Furthermore, the public nature of the schools included in the zone, such as

15  Nathan Hale and Ingraham High Schools, is not enough to overcome a failure to

16  distinguish these comparators on the basis of accepted zoning criteria.  See Centro

17  Familiar, 651 F.3d at 1174-75 (considering public comparators such as post offices and

18  prisons).  The Court finds that the City has failed to demonstrate that Bishop Blanchet is

19  not similarly situated to public schools with respect to accepted zoning criteria.

20         **2.  Conclusion**

21         The City violates RLUIPA if it treats "a religious assembly or institution on less

22  than equal terms with a nonreligious assembly or institution."  42 U.S.C. § 2000cc(b)(1).

23

ORDER - 10

1  In this case, the City treated Bishop Blanchet, a religious assembly, on less than equal

2  terms with Nathan Hale and Ingraham High Schools, nonreligious assemblies.  The City

3  has failed to prove that the treatment should not be deemed unequal, and therefore the

4  Court holds that the City violated RLUIPA in requiring Bishop Blanchet to obtain a

5  variance of the height requirement instead of allowing Bishop Blanchet to utilize the

6  Special Exception process.

7       **C.  Due Process Claim**

8       Bishop Blanchet argues that the City also violated the Washington State

9  Constitution's substantive due process provision, which provides that "[n]o person shall

10 be deprived of life, liberty, or property without due process of law."  Wash. Const. art. I,

11 § 3.  For reasons of judicial restraint, courts should not unnecessarily decide

12 constitutional issues.  <u>Tung Chi Jen v. Immigration & Naturalization Service</u>, 566 F.2d

13 1095, 1096 (9th Cir. 1977).   "Federal courts will not resolve such claims if an

14 alternative, nonconstitutional basis for decision is available."  <u>Id.</u>  Having resolved

15 Bishop Blanchet's RLUIPA claim in its favor, which entitles Bishop Blanchet to all relief

16 it would be entitled to if it were to also prevail on its constitutionality claim, the Court

17 declines to reach the issue.[9]

18 **Conclusion**

19      For the foregoing reasons, the Court GRANTS Plaintiffs' motion for summary

20 judgment, docket no. 18, DENIES Defendant's and Interested Party's motions for

21 _____

22 [9] The Court DENIES Defendant's motion to certify a question to the Washington Supreme
   Court, docket no. 32.

23

ORDER - 11

1    summary judgment, docket nos. 22 and 25, and DENIES Defendant's motion to certify a

2    question to the Washington Supreme Court, docket no. 32.  The City is ORDERED to re-

3    consider Bishop Blanchet's proposal to install field lights on its athletic field using the

4    same standard that applies to public schools under SMC 23.51B.002.D.6.  The parties are

5    DIRECTED to file a joint status report on or before June 27, 2014, regarding any further

6    proceedings necessary, including whether a trial on damages will be required.[10]

7              IT IS SO ORDERED.

8              DATED this 20th day of June, 2014.

9                                          _____
                                           Thomas S Zilly
10                                         THOMAS S. ZILLY
                                           United States District Judge

11

12

13

14

15

16

17

18

19

20

21    ───────────────

22    [10] Plaintiffs may file a motion for attorney's fees after all proceedings have ended and judgment
      has been entered, pursuant to Fed. R. Civ. P. 54(d).

23

ORDER - 12